MAASSEN, Justice.
*285 I. INTRODUCTION
The Alaska Workers' Compensation Board denied a worker's request that his employer pay for a van modified to accommodate his work-related disability. On appeal, the Alaska Workers' Compensation Appeals Commission decided that a modifiable van was a compensable medical benefit. The worker moved for attorney's fees. The Commission reduced the attorney's hourly rate, deducted a few time entries, and awarded him less than half of what was requested. The worker asked the Commission to reconsider its award, but it declined to do so because of its view that the Alaska Workers' Compensation Act (the Act) allows it to reconsider only the final decision on the merits of an appeal.
We granted the worker's petition for review. We hold that the Commission has the necessarily incidental authority to reconsider its non-final decisions. We also reverse the Commission's award of attorney's fees and remand for an award that is fully compensable and reasonable.
II. FACTS AND PROCEEDINGS
Bryce Warnke-Green was rendered tetraplegic by a work-related accident in 2014 in Nome, his hometown. He was treated in Seattle at Harborview Medical Center and remained in that area while continuing to receive medical care.
To get to his medical appointments, Warnke-Green used a cabulance - which he described as a taxicab for wheelchair users - or, when medically necessary, an ambulance. He testified that the cabulance was not entirely reliable, which caused him to miss some appointments. In late 2015 Warnke-Green's father asked the employer, Pro-West Contractors, LLC, to provide Warnke-Green with a modified van. Pro-West had earlier disputed that Warnke-Green's choice of a long-term transportation option would "be compensable under [his] claim," but the parties discussed settling the van issue. Pro-West sent a draft settlement agreement to Warnke-Green providing for Pro-West's "one time only purchase" of a modified van in exchange for his waiver of "all further entitlement to ... transportation reimbursement" other than for medical emergencies.
Warnke-Green did not sign the agreement; instead, he obtained an attorney and filed a workers' compensation claim for a "new modified van." Pro-West answered the claim, "d[id] not admit any portion" of it, and raised as an affirmative defense that Warnke-Green had agreed to a settlement but refused to sign it.[1] Warnke-Green later sent a revised settlement agreement to Pro-West that preserved his future entitlement to transportation reimbursements, but Pro-West did not agree to it.
The Board held a hearing on the "modified van" claim in April 2016. The competing draft settlement agreements were included in the record without objection, though both parties acknowledged that their inclusion was "odd" and "rather unusual."
In his prehearing memorandum, Warnke-Green cited cases from other states holding that modifying an existing vehicle or acquiring a van with modifications was compensable as a medical benefit. At the hearing he asked for a modified van - his attorney said that "[i]t [did]n't have to be a new one" - with an offset of $ 500 to $ 1,000 representing the value of an old Chevrolet Suburban he had in Nome.
Pro-West, in its prehearing memorandum, identified the "majority view" based on out-of-state cases: "that the employer/insurer generally must pay for the special equipment required to outfit a vehicle" but not "the *286 purchase price of the vehicle itself." According to Pro-West, other states had adopted "the 'Crouch rule' or 'Crouch formula,' " under which the employer is responsible for "the cost of any special equipment or adaptations to a vehicle or van, plus the cost difference between that vehicle and an ordinary non-adapted vehicle such as the type the employee would otherwise have owned." (Emphasis omitted.) Pro-West contended that the Board had already adopted the Crouch rule and had applied it "consistently since 1981." Pro-West also discussed cases from three jurisdictions that rejected similar claims entirely, based on their statutes. At the hearing Pro-West argued that if it was required to provide a van, it should owe only the difference in price between "a standard American car or pickup and a van that's modified," explicitly denying that the offset should be only the value of Warnke-Green's old Suburban.
The Board denied Warnke-Green's claim in its entirety. The Board decided that under the Act a modified van was not a medical benefit - specifically that it was neither an "apparatus" nor a "prosthetic device."[2] The Board also decided in the alternative that if a van was a medical benefit, the facts of the case did not require the employer to purchase one because Warnke-Green needed a car for personal, not medical, reasons. The Board decided that Warnke-Green was not entitled to a modified van as a transportation benefit either. It dismissed the precedential value of earlier decisions requiring employers to purchase modified vans for employees with similar catastrophic injuries, reasoning that those cases lacked "any legal authority or factual findings to support their results." It declined to follow the Crouch rule - by which the employer pays for modifications plus the difference in cost between the modifiable vehicle and an ordinary, unadapted vehicle - because the cases that adopted the rule "were based on the premise an automobile was a compensable apparatus or device under the applicable state's workers' compensation statute."
Warnke-Green appealed to the Commission. The Commission, while agreeing with the Board that a modified van was not a "prosthetic device," decided that it was an "apparatus" included within the Act's definition of "medical benefits." It therefore held Pro-West responsible for "any increased cost associated with the purchase of a modifiable motor vehicle and any necessary modifications which will enable Mr. Warnke-Green to use the motor vehicle." The Commission anticipated an offset, noting its belief that the parties had agreed that Warnke-Green would contribute the value of his "inoperable Suburban van." The Commission remanded the case to the Board for further proceedings consistent with its decision.
Warnke-Green then moved for over $ 30,000 in attorney's fees as the successful party in the Commission appeal,[3] including with his motion an itemized affidavit. The requested hourly rates for attorneys were $ 400 an hour for Eric Croft and $ 300 an hour for Selena Hopkins-Kendall; the rate for paralegal time was $ 170 an hour.
Pro-West did not question the requested hourly rates or any individual time entries. It did oppose the motion, however, on grounds that Warnke-Green was not "a successful party" because "[h]e did not prevail on his November 27, 201[5] claim seeking 'a new modified van.' " Pro-West argued that it was the successful party in the Commission appeal; it quoted part of the Commission's decision to the effect that Pro-West had only "asked him to contribute the value of his Suburban which Mr. Warnke-Green estimates to be between $ 500 and $ 1,000." Pro-West further contended that the Commission's decision validated the position Pro-West *287 had held consistently both before and after Warnke-Green filed his claim. It maintained that Warnke-Green "gained nothing from the entirety of this litigation."
The Commission, in considering the attorney's fees motion, first reduced the total requested. It decided without explanation that $ 350 an hour was "a reasonable hourly rate for an attorney practicing in the area of workers' compensation with [Croft's] experience and expertise" and reduced his hourly rate accordingly. It deducted 2.4 hours from Croft's total hours: a tenth of an hour for what the Commission thought was a duplicate billing for an email and 2.3 hours for paralegal supervision, which according to the Commission should have been included in overhead.[4]
The Commission then considered whether Warnke-Green "actually prevailed on a significant issue on appeal." The Commission agreed with Pro-West that Warnke-Green, having been awarded a modified van minus the value of his Suburban, "obtained only what had been offered prior to the filing of his claim," which the Commission said was "considerably less than what Mr. Warnke-Green sought." The Commission cut in half the "adjusted fees" and awarded attorney's fees of $ 13,956.00.
Warnke-Green asked the Commission to reconsider its decision, arguing that (1) Pro-West's litigation position was not what the Commission seemed to think it was; (2) the Commission's decision gave Warnke-Green more than Pro-West had offered in settlement; and (3) the fee reductions were not justified. The Commission denied reconsideration, however, reasoning that it was allowed to "only reconsider a final decision on the merits of an appeal." (Emphasis in original.)
Warnke-Green filed a petition for review, which we granted as to these three issues:
(1) Does the Commission have authority to reconsider orders that are not final decisions? If so, what is the source of the authority and what limits, if any, are there on this authority?
(2) Did the Commission err in considering the parties' underlying litigation before the Board, including any settlement offers, in determining the amount of attorney's fees to be awarded for the appeal before the Commission?
(3) Did the Commission abuse its discretion by awarding the employee less than his full reasonable attorney's fees after he prevailed in his appeal before the Commission?
III. STANDARDS OF REVIEW
Whether the Commission has the authority to reconsider orders other than final decisions on the merits is a question of law to which we apply our independent judgment.[5] We interpret a statute "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[6]
We use our independent judgment to interpret the attorney's fees provisions of the Workers' Compensation Act.[7] While we may *288 consider an agency's interpretation of a statute "within [the agency's] area of jurisdiction[,] ... particularly when the agency's interpretation is longstanding,"[8] there is no indication that the Commission, in its award of attorney's fees in this case, was applying a longstanding interpretation of the statute.[9]
We review the amount of fees awarded for abuse of discretion.[10] To the extent the Commission's decision is based on findings of fact, we consider whether the findings are "supported by substantial evidence in light of the whole record."[11] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[12]
IV. DISCUSSION
A. The Commission's Authority To Reconsider Its Decisions Is Not Limited To Its Final Decisions On The Merits.
The Commission's refusal to reconsider its attorney's fees order was evidently based on its belief that it lacks authority to do so under the Act. After quoting AS 23.30.128(e), which describes decisions on appeal,[13] the Commission set out the text of AS 23.30.128(f), which describes the process of reconsideration, and cited its regulation on the same subject.[14] The Commission emphasized subsection (f)'s references to subsection (e):
A party or the director may request reconsideration of a decision issued under (e) of this section within 30 days after the date of service shown in the certificate of service of the decision .... The power to order reconsideration expires 60 days after the date of service, as shown on the certificate of service, of a decision issued under (e) of this section ....[15 ]
Noting that the statute and regulation addressed only "a final decision on the merits of an appeal," the Commission concluded that there was "no provision in either the Alaska Statutes or the Commission's regulations for reconsideration of the Commission's rulings on motions." It held that "Mr. Warnke-Green's motion for reconsideration cannot be considered on this basis."
The Commission is correct that the language of AS 23.30.128(f), while addressing reconsideration in detail, is silent about reconsideration of any decisions other than the *289 final decisions on appeal described in subsection (e). Nor is reconsideration of interim orders meaningfully discussed in the Act's description of the Commission's powers and duties[16] or in its outline of the procedure to be used in Commission appeals.[17]
According to Pro-West, this statutory silence is evidence that the legislature decided against allowing the Commission a general authority to reconsider its decisions.[18] We recognized in Greater Anchorage Area Borough v. City of Anchorage that administrative agencies have "no inherent powers, but only such as have been expressly granted to [them] by the legislature or have, by implication, been conferred upon [them] as necessarily incident to the exercise of those powers expressly granted."[19] More recently, in Monzulla v. Voorhees Concrete Cutting , we interpreted the Act as giving the Commission implied authority over interlocutory review, setting out factors other courts have considered when evaluating whether an administrative agency "properly exercised an implied power."[20] Monzulla requires us to consider whether Commission authority to reconsider decisions other than final decisions is "necessarily incident to the exercise of those powers expressly granted" to the Commission.[21]
Alaska Statute 23.30.128 sets out "Commission proceedings." Subsection (d) grants the Commission the authority to "affirm, reverse, or modify a decision or order upon review and issue other orders as appropriate ." (Emphasis added.) We conclude that an adjudicative body's authority to "issue other orders as appropriate" is broad enough to include a general authority to reconsider decisions other than final decisions. Other state courts have recognized that administrative agencies with adjudicative powers necessarily have authority to reconsider their decisions because reconsideration is a necessary part of adjudication.[22] Indeed, the issue courts face more frequently is whether an agency has the authority to reconsider its final decisions in the absence of explicit statutory authority.[23] Alaska Statute 23.30.128(f) gives us unmistakable direction on that issue. And we conclude that construing the Act as allowing reconsideration of final decisions but not others would be inconsistent with the overall purposes of the Act and the 2005 amendments that created the Commission.
We recognized in Monzulla that "[t]he goal of the statutory amendment that established the Commission was 'to increase the efficiency and flexibility of the current system ... and reduce some of its costs.' "[24] And we agreed "that the legislature wanted those seeking review of Board decisions to have the same procedural rights of review that they had in the superior court."[25] As a general matter, the legislature has directed that the Act be construed "to ensure the quick, efficient, fair, and predictable delivery of indemnity and medical benefits to injured workers *290 at a reasonable cost to ... employers."[26]
Consistent with these purposes, we interpret the Act as allowing the Commission to reconsider its non-final orders. In the context of the doctrine requiring exhaustion of administrative remedies, we have consistently emphasized the benefit to "both administrative autonomy and judicial economy" when an administrative body is allowed the opportunity "to correct its errors and a complainant [is allowed the opportunity] to obtain relief without judicial intervention."[27] Pro-West suggests that an appeal is a sufficient substitute for reconsideration, but we disagree. An appeal can be time-consuming and costly and sometimes involve significant delay, especially when any chance for appellate review of a non-final order must await the case's final disposition.[28] An error corrected on reconsideration reflects the administrative agency's best-informed judgment and is one less reason for a judicial appeal, with the time and cost that invariably entails.
We further note that because Commission regulations governing motions do not permit replies to oppositions,[29] reconsideration may be the only opportunity a party has short of an appeal to point out errors in the opposition. In this case Warnke-Green attempted in his reconsideration motion to counter some assertions Pro-West made in its opposition; he also provided evidence to the Commission related to issues the Commission raised on its own - for example, showing that the Commission was mistaken in its finding that his attorney had billed twice for a single email.
At oral argument before us, Pro-West agreed that the Commission could reconsider non-final orders when it had made an obvious mistake - for example by deciding a motion without considering a timely filed opposition - but did not articulate a clear standard for identifying an obvious mistake. Like Pro-West, we are aware of no principled way to identify those mistakes that are sufficiently obvious to permit reconsideration. We do not suggest that the Commission must entertain any and all motions for reconsideration; we agree with Warnke-Green that "the proper course is to clarify that the right exists and allow the [Commission] to adopt regulations clarifying the scope and limits of the right." We therefore hold that AS 23.30.128(f) does not prohibit the Commission from reconsidering orders other than the final decisions described in AS 23.30.128(e) because the authority to reconsider is necessarily incident to the Commission's express authority to "issue other orders as appropriate."[30]
B. The Commission Erred By Considering The Parties' Underlying Litigation Before The Board, Including Their Settlement Offers, When Determining Attorney's Fees For The Commission Appeal.
Because the Commission thought the amount of fees Warnke-Green requested was excessive, it reduced Croft's hourly rate and disallowed some time entries to arrive at a base fee amount. It then considered the "more difficult" question of whether Warnke-Green "actually prevailed on a significant issue on appeal." The Commission observed that Warnke-Green's claim before the Board "asked specifically for a 'new modified van' " and that Pro-West "denied the 'new modified van' and as an affirmative defense stated the employer was not required to pay the full *291 cost of the modified van as [the] employee had owned a vehicle at the time of injury." The Commission noted that it "affirmed the Board's decision that a modifiable van was not a prosthetic device" but otherwise disagreed with the Board, concluding that the van was "an apparatus ... and thus a compensable medical benefit." The Commission then decided, however, that Warnke-Green "obtained only what had been offered prior to the filing of his claim," and the only real benefit achieved by the appeal was clarification "that an injured worker needs to contribute the value of the vehicle owned at the time of injury towards the purchase of the modified van." The Commission wrote "that this clarification might be considered to be a significant issue, although it is considerably less than what Mr. Warnke-Green sought." It concluded that it was "appropriate to award as a full compensatory and reasonable fee the amount of $ 13,956.00, or one-half of the adjusted fees."
We held in Lewis-Walunga v. Municipality of Anchorage that a successful party in a Commission appeal under AS 23.30.008(d) is the same as a "successful claimant" under former Alaska Appellate Rule 508(g)(2), which served as a model for AS 23.30.008(d).[31] A successful party is one who prevailed "on a significant issue on appeal ."[32] Interpreting AS 23.30.008(d), we observed that its language "signal[s] that the Commission's fee award is independent of success in the underlying claim" and "does not tie a fee award to success on a claim - it instructs the Commission to award fees in the appeal."[33] We later reiterated that success on appeal is not tied to success on the claim itself and that a claimant need not prevail on all issues to be a successful party on appeal.[34]
Because success on appeal is not tied to success on the claim itself, neither the relief Warnke-Green requested in his initial worker's compensation claim nor Pro-West's settlement offer is legally relevant to whether he was a successful party on appeal. To determine success on appeal, the Commission needs to consider what the Board ordered, what the parties sought in the appeal, and what the appeal decided.
The Board decided that a modified van was not a transportation benefit or a medical benefit (being neither an "apparatus" nor a "prosthetic device") and denied Warnke-Green's claim in its entirety.[35] On appeal, Warnke-Green asked the Commission "to conclude legally that a modified van is an allowable medical or related transportation benefit under the Act" and to "order the insurance company to either pay the full price of the modified van or deduct only the value of the actual vehicle [he] owned." The Commission did just as Warnke-Green requested: It decided that "any increased costs associated with the purchase of a modifiable motor vehicle and any necessary modifications which will enable Mr. Warnke-Green to use the motor vehicle are encompassed in the language 'apparatus' and, thus, are compensable medical benefits under the Act." The Commission found that the parties had agreed to the amount of any offset based on the value of Warnke-Green's old Suburban.[36]
*292 On this record, we see no basis for questioning Warnke-Green's success in the appeal; the Commission awarded what he asked for. The Commission's conclusion that Warnke-Green obtained "considerably less than what [he] sought" is erroneous.
Even if the parties' positions before the Board were relevant to success on appeal, the Commission's findings here are not supported by the record. We have found no evidence to support the Commission's conclusion in its substantive decision that "Pro West has stated it is willing to provide Mr. Warnke-Green with a modified van, but has only asked that he contribute something to the purchase," that being "the value of his Suburban," which Warnke-Green refused to do. In fact Pro-West specifically denied that this was its position when asked by the Board chair. Rather, Pro-West's main argument was that the Board should apply the Crouch rule - "which awards an employee the cost of any special equipment or adaptations to a vehicle or van, plus the cost difference between that vehicle and an ordinary non-adapted vehicle such as the type the employee would otherwise have owned"[37] (emphasis omitted) - and it advanced the alternative argument that Warnke-Green's claim be denied in its entirety. We also agree with Warnke-Green that what he obtained through litigation was more than Pro-West's proposed settlement, which required him to forgo any future non-emergency medical transportation costs; these could be considerable given his age and medical status. The Commission's decisions thus both misstated Pro-West's litigation position and mischaracterized Pro-West's settlement offer.
In light of the statutory mandate that the successful party in an appeal is entitled to "fully compensable and reasonable"[38] attorney's fees, the Commission's decision to award Warnke-Green only half his fees was legal error.
C. The Commission Clearly Erred By Reducing The Attorney's Hourly Rate, Abused Its Discretion By Disallowing One Time Entry, But Did Not Abuse Its Discretion By Disallowing Others.
Warnke-Green appeals both the Commission's reduction of Croft's hourly rate from $ 400 to $ 350 and its disallowance of 2.4 hours of Croft's time. We conclude that the Commission clearly erred by reducing the rate without an evidentiary basis for doing so and that its disallowance of one time entry was an abuse of discretion.
A successful party represented by counsel before the Commission is entitled to attorney's fees "that the [C]ommission determines to be fully compensatory and reasonable."[39] Neither AS 23.30.008(d) nor 8 AAC 57.250, the Commission's regulation on attorney's fees, expands on the meaning of the phrase "fully compensatory and reasonable." The Commission has published few of its attorney's fees decisions,[40] and the parties have not cited any that are directly relevant to this question. Pro-West did not dispute that the fees Warnke-Green requested were reasonable as to the hourly rate and the number *293 of hours expended; Pro-West confined its opposition to an argument that it, not Warnke-Green, was the successful party in the appeal.
We review the amount of attorney's fees awarded for an abuse of discretion.[41] This standard of review is consistent with both the statutory language and the standard we apply when reviewing attorney's fees awarded by the Board.[42] But here the Commission also made factual findings. With respect to the hourly rate, the Commission wrote that it "f[ound] an hourly rate of $ 350.00 per hour to be a reasonable hourly rate for an attorney practicing in the area of workers' compensation with the experience and expertise exemplified by attorney Eric Croft." No evidence in the record supports the Commission's finding,[43] and the Commission did not explain it. The only evidence of reasonable hourly rates in the record was the affidavit in support of Croft's request for attorney's fees. This evidence was unchallenged[44] and is not obviously unreasonable; we note that we and the Board have both awarded Croft fees at this rate in other workers' compensation cases.[45] In short, because the Commission's decision to reduce Croft's hourly rate is unsupported by the record, it is arbitrary and an abuse of discretion.
Turning to the 2.4 hours of disallowed time, we begin by observing that Pro-West did not challenge the number of hours or the reasonableness of the identified tasks. The Commission nonetheless speculated that two entries for emails on the same day must be duplicative and therefore disallowed one of them. Again, there is no evidence to support the Commission's speculation, and Warnke-Green submitted copies of two emails when he asked the Commission to reconsider its attorney's fees award. The Commission was clearly mistaken in assuming a duplicative charge.
The Commission further reduced Croft's hours for "supervisory activities" related to paralegals, writing that such activities "are encompassed within the billing rate which covers office overhead." The relevant time entries are vague and do not clearly indicate that the attorney was adding value to the work as opposed to training his staff - which is equally necessary to the practice of law but not ordinarily chargeable to the client (or, in cases like this, to the employer).[46] Warnke-Green does not explain the entries further in his brief on appeal other than to emphasize the importance of attorneys' ethical duty to carefully supervise their paralegals' work. Given the broad discretion we ordinarily give to courts' determinations of such issues,[47] we cannot conclude that it was an abuse of discretion for the Commission to exclude these entries for paralegal supervision.
With the exception of these entries, however, we conclude that the Commission's decision here is contrary to the policy underlying *294 former Appellate Rule 508(g) and by extension AS 23.30.008(d).[48] The purpose of awarding full reasonable attorney's fees in workers' compensation cases is to ensure that competent counsel are available to represent injured workers.[49] The Commission abused its discretion when it lowered Croft's hourly rate and disallowed one of his time entries without an evidentiary basis for doing so.
V. CONCLUSION
We REVERSE the Commission's determination that it lacks the authority to reconsider decisions other than its final decisions in an appeal. We REVERSE the Commission's attorney's fees award and remand to the Commission for an award of fully compensable and reasonable fees consistent with this opinion.

Under AS 23.30.012(b), a workers' compensation settlement agreement between an unrepresented claimant and an employer must be reviewed and approved by the Board to be enforceable.

The Act requires employers to "furnish medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus for the period which the nature of the injury or the process of recovery requires ...." AS 23.30.095(a). "[M]edical and related benefits" include but are "not limited to physicians' fees, nurses' charges, hospital services, hospital supplies, medicine and prosthetic devices," and "prosthetic devices" include but are not limited to "eye glasses, hearing aids, dentures, and such other devices and appliances ...." AS 23.30.395(26), (33).

Alaska Statute 23.30.008(d) provides that the Commission "shall award a successful party reasonable costs" and attorney's fees.

The Commission made two additional deductions not at issue in this appeal.

See Monzulla v. Voorhees Concrete Cutting , 254 P.3d 341, 343-44 (Alaska 2011) (using independent judgment when considering whether Commission had authority over interlocutory review of Board orders).
To the extent Pro-West is arguing that we should defer to the Commission because it is interpreting its own regulation regarding reconsideration, we reject that argument. The regulation has no substantive content and merely outlines the process for requesting reconsideration of final decisions. 8 Alaska Administrative Code (AAC) 57.230(a) (2011).

Louie v. BP Expl. (Alaska), Inc. , 327 P.3d 204, 206 (Alaska 2014) (citing Grimm v. Wagoner , 77 P.3d 423, 427 (Alaska 2003) ).

See, e.g. , Burke v. Raven Elec., Inc. , 420 P.3d 1196, 1202, 1208 (Alaska 2018) (holding that meaning of "injured worker" in AS 23.30.008(d), governing attorney's fees awards on Commission appeals, was question of statutory interpretation reviewed using independent judgment); State, Div. of Workers' Comp. v. Titan Enters., LLC , 338 P.3d 316, 320-21 (Alaska 2014) (using independent judgment to determine whether nonclaimants can be awarded fees in Commission appeals against other nonclaimants); Underwater Constr., Inc. v. Shirley , 884 P.2d 156, 158 (Alaska 1994) (holding that question whether Board had authority to award fees under AS 23.30.145(a)"require[d] statutory interpretation involving no administrative expertise").

Hendricks-Pearce v. State, Dep't of Corr. , 323 P.3d 30, 35 (Alaska 2014).

Pro-West cites Dockter v. Southeast Alaska Regional Health Consortium , AWCAC Dec. No. 246 (Mar. 29, 2018), and Rusch v. Southeast Alaska Regional Health Consortium , AWCAC Dec. No. 245 (Mar. 29, 2018), in support of an argument that we should defer to the Commission's interpretation of attorney's fees statutes. Both cases are about Board awards of attorney's fees under AS 23.30.145, not fees for Commission appeals under AS 23.30.008(d). Commission decisions do not show that the Commission generally considers the positions taken before the Board when awarding fees on appeal, as it did here. See Municipality of Anchorage v. Syren , AWCAC Dec. No. 015 at 2-3 (Aug. 3, 2006) (considering parties' positions and success before the Commission in awarding fees); Doyon Drilling Inc. v. Whitaker , AWCAC Dec. No. 008 at 2 (Apr. 14, 2006) (same).

See Williams v. Abood , 53 P.3d 134, 139 (Alaska 2002) (citing Bouse v. Fireman's Fund Ins. Co. , 932 P.2d 222, 241 (Alaska 1997) ) (applying abuse of discretion standard to amount of fees under Board award); cf. Shehata v. Salvation Army , 225 P.3d 1106, 1119 (Alaska 2010) (applying abuse of discretion standard to question of frivolousness).

Lewis-Walunga v. Municipality of Anchorage , 249 P.3d 1063, 1066 (Alaska 2011) (quoting AS 23.30.129(b) ).

Burke v. Houston NANA, L.L.C. , 222 P.3d 851, 858 (Alaska 2010) (quoting DeYonge v. NANA/Marriott , 1 P.3d 90, 94 (Alaska 2000) ).

Alaska Statute 23.30.128(e) sets out the deadline for the Commission to issue a decision in an appeal, a decision's necessary elements, instructions for its service, and direction that "[u]nless reconsideration is ordered under (f) of this section," the decision described in subsection (e) "is the final commission decision."

8 AAC 57.230(a) ("A party may request reconsideration of a final commission decision by filing a motion, supported by an affidavit or other evidence of the specific grounds for reconsideration, as provided in AS 23.30.128(f).").

AS 23.30.128(f) (emphasis supplied by Commission).

AS 23.30.008.

AS 23.30.128.

At times Pro-West appears to interpret the Commission's order differently from our reading of it, arguing that the Commission, by regulation, has simply chosen not to exercise its reconsideration authority. The more natural reading of the Commission's order is that it found no authority to reconsider decisions other than those described in AS 23.30.128(e). We see no other explanation for the Commission's addition of emphasis when quoting AS 23.30.128(f) and 8 AAC 57.230(a).

504 P.2d 1027, 1033 n.19 (Alaska 1972), overruled on other grounds by City & Borough of Juneau v. Thibodeau , 595 P.2d 626 (Alaska 1979).

254 P.3d 341, 346-47 (Alaska 2011).

Greater Anchorage Area Borough , 504 P.2d at 1033 n.19.

See, e.g. , Olmstead v. Dep't of Telecomms. &Cable , 466 Mass. 582, 999 N.E.2d 125, 127 n.5 (2013) (inherent authority); Cty. of Douglas v. Neb. Tax Equalization & Review Comm'n , 296 Neb. 501, 894 N.W.2d 308, 323 (2017) (implied authority); Boydston v. Liberty Nw. Ins. Corp. , 166 Or.App. 336, 999 P.2d 503, 505-06 (2000) (inherent power).

See E. H. Schopler, Annotation, Power of administrative agency to reopen and reconsider final decision as affected by lack of specific statutory authority , 73 A.L.R.2d 939 (1960).

254 P.3d at 346 (quoting 2005 Senate Journal 465).

Id. at 347.

AS 23.30.001(1).

Smart v. State, Dep't of Health &Soc. Servs. , 237 P.3d 1010, 1015 (Alaska 2010) ; see also Alyeska Pipeline Serv. Co. v. State, Dep't of Envtl. Conservation , 145 P.3d 561, 566 (Alaska 2006) ("[A]s we have noted, the purpose of an administrative review process is to allow an agency 'to correct its own errors so as to moot judicial controversies.' " (quoting Voigt v. Snowden , 923 P.2d 778, 781 (Alaska 1996) )).

See Municipality of Anchorage v. Anderson , 37 P.3d 420, 422-23 (Alaska 2001) (Matthews, J., dissenting) (setting out paths for review of attorney's fees decision when superior court remanded case to Board).

See 8 AAC 57.100 (permitting opposition to stay request, but making no provision for reply); 57.140 (permitting opposition to some motions for extension of time but not providing for replies); 57.210 (allowing opposition to motions, but making no provision for reply); 57.260 (allowing opposition to motion for attorney's fees, but making no provision for reply).

AS 23.30.128(d).

249 P.3d 1063, 1067-68 (Alaska 2011).

Id. at 1068 & n.16 (emphasis added) (summarizing attorney's fees awards under former Appellate Rule 508(g)(2) ).

Id. at 1068.

Humphrey v. Lowe's Home Improvement Warehouse, Inc. , 337 P.3d 1174, 1182 (Alaska 2014). We note that earlier Commission decisions interpreted AS 23.30.008 similarly, deciding that success in an appeal was unrelated to success on the underlying claim. See Municipality of Anchorage v. Syren , AWCAC Dec. No. 015 at 1-3 (Aug. 3, 2006) (considering parties' positions and success before the Commission in awarding fees); Doyon Drilling Inc. v. Whitaker , AWCAC Dec. No. 008 at 2 (Apr. 14, 2006) (same). In this case, the Commission did not mention or cite these decisions, which under AS 23.30.008(a) and our interpretation of it are precedential for the Commission. See Alaska Pub. Interest Research Grp. v. State , 167 P.3d 27, 44-45 (Alaska 2007).

Pro-West advocated denial of the claim as an alternative position before the Board, but this was not its principal position.

We have been unable to find support for this finding in the record preceding the attorney's fees litigation, but Pro-West conceded the point in its opposition to the attorney's fees motion in the Commission: "As the Commission noted in its Decision, Employer 'Pro-West ... has asked [Warnke-Green] to contribute the value of his Suburban [vehicle] which Mr. Warnke-Green estimates to be between $ 500 and $ 1,000.' "

Pro-West wrote in its hearing brief: "Importantly for the dispute now before the Board, this [the Crouch rule] is precisely Pro-West's position here."

AS 23.30.008(d).

Id.

We have identified the following decisions on the Commission's website as related to attorney's fees: Titan Enters., LLC v. State, Div. of Workers' Comp. , AWCAC Dec. No. 210 at 8-9 (Feb. 18, 2015) (on remand from this court, awarding $ 38,000 to employer who was partially successful in appeal against Division related to fine for failure to insure); Municipality of Anchorage v. Adamson , AWCAC Dec. No. 203 at 5 (Nov. 12, 2014) (deciding that employee's request for attorney's fees following successful appeal to this court was too late); Rockstad v. Chugach Eareckson , AWCAC Dec. No. 108 at 9 (May 11, 2009) (refusing to award fees to employer); Shehata v. Salvation Army , AWCAC Dec. No. 075 at 7 (Mar. 19, 2008) (awarding fees to employer), rev'd 225 P.3d 1106, 1119 (Alaska 2010) ; Municipality of Anchorage v. Syren , AWCAC Dec. No. 015 at 8 (Aug. 3, 2006) (awarding fees to claimant for interlocutory review); Doyon Drilling, Inc. v. Whitaker , AWCAC Dec. No. 008 at 5 (Apr. 14, 2006) (awarding fees to claimant).

Cf. Shehata , 225 P.3d at 1119 (applying abuse of discretion standard to question of frivolousness under AS 23.30.008(d) ).

Williams v. Abood , 53 P.3d 134, 139 (Alaska 2002).

We review the Commission's factual findings to determine whether they are "supported by substantial evidence in light of the whole record." Lewis-Walunga v. Municipality of Anchorage , 249 P.3d 1063, 1066 (Alaska 2011) (quoting AS 23.30.129(b) ).

Syren , AWCAC Dec. No. 015 at 8 n.18 (treating reasonable hourly rate as fact issue, Commission writes that employer "submitted no evidence that the hourly fee charged by [claimant's] attorney was 'manifestly unreasonable' " and concludes that "the hourly fee was not challenged" (quoting State, Dep't of Revenue v. Cowgill , 115 P.3d 522, 524 (Alaska 2005) )).

Adamson v. Municipality of Anchorage , Nos. S-15006/15025 (Alaska Supreme Court Order, Oct. 8, 2014 and underlying motion); Rusch v. S.E.A.R.H.C. , AWCB Dec. No. 16-0131 at 10, 16 (Dec. 21, 2016).

Under the heading "Supervise Paralegal Activities," the entries include, for example, "James on brief draft schedule"; "review brief draft with James"; "JC on research and writing tasks"; "PJ on post brief issues"; "PJ on oral argument."

See Hodari v. State, Dep't of Corr. , 407 P.3d 468, 473 (Alaska 2017) (observing that it is within superior court's broad discretion to "refuse to award fees based on 'billings that are too vague to allow a fair determination that they were reasonably incurred or incurred in connection with the ... lawsuit' " (quoting Bobich v. Hughes , 965 P.2d 1196, 1200 (Alaska 1998) )).

See Lewis-Walunga , 249 P.3d at 1067 (finding legislative intent for attorney's fees in Commission appeals "to follow the same rules as appellate attorney's fees awards in the courts").

Cowgill , 115 P.3d at 524 ; see also Syren , AWCAC Dec. No. 015 at 2-3 (interpreting AS 23.30.008(d) and recognizing objective of making competent counsel available to injured workers).