*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SANDRA J. RUSCH and BRENDA DOCKTER, | ) ) ) | Supreme Court No. S-18038 |
| Appellants, | ) ) ) | Alaska Workers' Compensation Appeals Commission Nos. 17-001, |
| v. | ) ) | 17-002 |
| SOUTHEAST ALASKA REGIONAL HEALTH CONSORTIUM and ALASKA NATIONAL INSURANCE COMPANY, | ) ) ) ) | O P I N I O N  No. 7623 – September 30, 2022 |
| Appellees. | ) ) ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission.

Appearances: David A. Graham, Sitka, and J. John Franich, Franich Law Office, LLC, Fairbanks, for Appellants. Michael A. Budzinski, Meshke Paddock & Budzinski, Anchorage, for Appellees.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

HENDERSON, Justice.

## I.     INTRODUCTION

Does the Alaska Workers' Compensation Act authorize the Alaska Workers' Compensation Appeals Commission to award enhanced attorney's fees to

successful claimants for their attorneys' work in a Commission appeal? The Commission decided the Act did not. Before the Commission was created, we allowed enhanced attorney's fees in workers' compensation appeals. We have previously decided the legislature intended attorney's fees in Commission appeals to be comparable to fees awarded under the appellate rules; we thus hold that the Act authorizes enhanced awards for work before the Commission as a means of accounting for the contingent nature of representing workers' compensation claimants. Because the Commission's decision rested on an incorrect interpretation of the Act and because the Commission failed to consider the claimants' evidence and arguments in favor of enhancement, we reverse the decision and remand the case to the Commission for further proceedings.

## II.    FACTS AND PROCEEDINGS

This consolidated appeal is before us a second time; we set out the relevant factual background from our decision of the first appeal.[1] Sitka attorney David Graham represented Sandra Rusch and Brenda Dockter in separate proceedings against the same employer before the Alaska Workers' Compensation Board.[2] Rusch injured her back working for the Southeast Alaska Regional Health Consortium (SEARHC) in Klawock.[3] Dockter sustained a knee injury at work for SEARHC in Sitka.[4] After litigation the parties successfully settled most issues with the assistance of a Board mediator.[5] The parties were unable to resolve the amount of attorney's fees SEARHC would pay for

---

[1]    *Rusch v. Se. Alaska Reg'l Health Consortium*, 453 P.3d 784 (Alaska 2019).

[2]    *Id.* at 788-89.

[3]    *Id.* at 787.

[4]    *Id.* at 788.

[5]    *Id.* at 788-89.

Graham's work, so that issue proceeded to hearings, which the Board heard jointly.[6] The Board awarded far less in attorney's fees than the claimants sought.[7] The claimants, now represented by J. John Franich with assistance from Graham, appealed to the Commission.[8] The Commission affirmed the Board's decisions, and the claimants appealed that final order to us.[9] We reversed the Commission's decisions, resolving most but not all issues in favor of the claimants, and remanded the case to the Commission with instructions to remand the case to the Board for further proceedings.[10] We instructed the Board to consider the factors from the Alaska Rules of Professional Conduct to determine reasonable fees.[11]

After we awarded attorney's fees to the claimants for their appeal to us,[12] the claimants sought fees for their work in the first appeal to the Commission, asking the Commission to adopt the modified lodestar approach to awarding fees. The claimants

---

[6]     *Id.* at 788-90.

[7]     *Id.* at 790, 792.

[8]     *Id.* at 792.

[9]     *Id.*

[10]    *Id.* at 807 (affirming Commission decision as to one issue and reversing as to all others).

[11]    *Id.* at 798-99.

[12]    We entered one $60,000 award for both attorneys for the consolidated appeals. *Rusch v. Se. Alaska Reg'l Health Consortium*, No. S-17069/S-17070 (Alaska Supreme Court Order, Nov. 23, 2020).

pointed out that the factors in the Rules of Professional Conduct are similar to the *Johnson-Kerr* factors used in the modified lodestar approach to fees, which we adopted for certain fee-shifting cases in *Adkins v. Collens*.[13]

In their Commission argument, the claimants detailed the steps in the modified lodestar approach from *Adkins*: "[C]ourts following this approach first calculate a baseline attorney's fee award by determining the reasonable number of hours the attorney worked and multiplying that by a reasonable hourly rate."[14] The court can then exercise its "discretion to adjust this baseline 'lodestar' amount to arrive at the final fee award."[15] The court "may consider a variety of factors in calculating the lodestar and deciding whether to adjust it, including what we have called the *Johnson-Kerr* factors."[16]

---

[13] 444 P.3d 187, 199 (Alaska 2019) (first citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); and then citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). *Adkins* and *State, Department of Health & Social Services v. Okuley*, 214 P.3d 247 (Alaska 2009), which *Adkins* cited, both observed that the *Johnson-Kerr* factors are similar to the factors for determining reasonable fees in the Rules of Professional Conduct and the Alaska Bar Rules. *Adkins*, 444 P.3d at 199-200 & n.33; *Okuley*, 214 P.3d at 251 n.13.

[14] *Adkins*, 444 P.3d at 199 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

[15] *Id.*

[16] *Id.* (citing *Okuley*, 214 P.3d at 251 n.13). *Okuley* listed a number of factors, noted the parties called them the *Johnson-Kerr* factors, and adopted that usage. 214 P.3d at 251 n.13. In *Adkins* we explicitly distinguished federal law and allowed courts to consider a contingency enhancement when deciding whether to adjust the lodestar even if contingency was a factor in determining the baseline lodestar amount because we recognized that such an enhancement "can provide a 'risk premium' necessary to induce competent counsel to litigate claims." *Adkins*, 444 P.3d at 200.

The claimants argued that in *Wise Mechanical Contractors v. Bignell*[17] the superior court and this court had used a method similar to the modified lodestar approach and that we had in our first *Rusch* decision directed the Board to use the *Bignell* factors to set reasonable fees on remand. They contended that these same factors should apply in Commission appeals.

The claimants sought a lodestar amount using an hourly fee of $450 for all of the hours their attorneys documented. They supplied the Commission with affidavits from both Franich and Graham about their professional experience and the amount they normally charged for appellate work. Franich stated he charged $450 an hour for "non-contingent" appeals, with a lower rate for non-contingent trial work. Graham said he "currently charge[s] . . . an hourly rate of $450" without distinguishing appellate from trial work. Franich attached to his affidavit several exhibits showing fees paid to other attorneys in areas of law in which contingency fee agreements are less common to support his statement that Graham's and his non-contingent hourly fees were within the range of fees attorneys with similar levels of experience charged. The exhibits included contracts and affidavits related to attorney's fees in constitutional cases, as well as a contract for mediation services.

The claimants argued that their attorneys' proposed "lodestar rate does not reflect the contingen[t] nature of workers' compensation appeals and is therefore not a fully compensable rate," justifying an enhancement of the lodestar amount. They noted that the modified lodestar method allows the Commission to "further adjust[] the lodestar fee," including application of the same factors used to determine a lodestar amount. The claimants then discussed the different *Johnson-Kerr* factors, identifying several that they argued would merit an upward adjustment of the lodestar amount in order for the fee

---

[17]    718 P.2d 971 (Alaska 1986).

award to be reasonable and fully compensatory. They sought $600 an hour, a one-third upward adjustment of $450.

SEARHC raised several arguments in opposition and also asked the Commission to strike the exhibits attached to Franich's affidavit. SEARHC contended we had not adopted the modified lodestar approach in workers' compensation cases, but its opposition was devoted largely to addressing specific *Johnson-Kerr* factors. It argued that the Board implemented *Bignell*'s directive about contingency by awarding Franich an enhanced hourly rate of $400, citing two Board decisions, one from 2012 and the other from 2016, to support this argument. SEARHC maintained that this hourly rate was already enhanced for contingency and that further enhancement was unjustified. SEARHC urged the Commission to award no fees to Graham because he was not the claimants' attorney of record on appeal. It alternatively argued that the Commission should award no more than $300 an hour to Graham, the hourly rate the Board awarded to him in the decision we reversed. SEARHC did not provide affidavits or other evidence with its opposition, but it argued that an hourly fee of $600 would be "240% above fees commonly charged by defense counsel." SEARHC did not object to any of the attorneys' individual time entries as unreasonable or unnecessary.

The Commission refused to strike the exhibits but did not place "much value" on them because the information was about rates in fields other than workers' compensation. The Commission concluded there was no legal basis to strike the documents because the Act expressly allows the Commission to "receive evidence on applications for . . . attorney['s] fees"[18] and its regulations did not limit the type of

---

[18]     AS 23.30.128(c).

-6-                                                7623

evidence. In distinguishing fees in different fields, the Commission discussed only the difference between torts and workers' compensation even though most of the exhibits related to litigation of constitutional issues.

The Commission decided not to apply the modified lodestar approach to awarding fees, declining to award an enhancement because we had "not mandated" that it do so.[19] The Commission first decided $400 to $450 was a reasonable contingent hourly rate for Commission appeals because parties in other cases, which the Commission did not identify, had so characterized these rates. It also pointed out that Graham had previously asked the Board for an hourly rate of $425, "describing it as a fair market rate for practitioners before the Board." The Commission reasoned that enhancing the fees awarded above this "lodestar" amount would "contraven[e] . . . the Act's mandate that workers' compensation claims be resolved, in part, at a cost reasonable to the employer," but it did not discuss other aspects of the legislature's intent.[20] It thought that allowing enhanced fees "in the no-fault system of workers' compensation could have a chilling effect on the willingness of an employer to appeal what it perceives to be an incorrect decision." The Commission was concerned that

---

[19] We agree with the parties that the Commission did not use the proper terms when discussing the modified lodestar method. The Commission used "lodestar" to refer to an enhancement, but the lodestar amount is the baseline amount of attorney's fees calculated "by determining the reasonable number of hours the attorney worked and multiplying that by a reasonable hourly rate." *Adkins*, 444 P.3d at 199. After calculating the "baseline 'lodestar' amount," a court using the modified lodestar method has "the discretion to adjust this baseline 'lodestar' amount to arrive at the final fee award." *Id.*

[20] AS 23.30.001(1) ("It is the intent of the legislature that . . . [the Act] ensure the quick, efficient, fair, and predictable delivery of . . . benefits to injured workers at a reasonable cost to . . . employers.").

allowing further enhancement above what it saw as high hourly fees "might also encourage employees to appeal minor or even frivolous issues" that they had lost at the Board level because "they potentially would receive a very large award of attorney fees."

Instead the Commission cited some of the factors outlined in the Rules of Professional Conduct to set a reasonable hourly fee. Because the factors in Professional Conduct Rule 1.5 are similar to the *Johnson-Kerr* factors, the Commission considered many of the arguments the parties made about them. The Commission rejected SEARHC's argument that Graham should be awarded no fees, observing that its regulations do not limit fee awards to the attorney of record and that Graham had provided unrebutted evidence that he assisted Franich in briefing the case. The Commission awarded $450 an hour to both attorneys. The Commission identified factors it had considered and found the following: (1) both attorneys had significant experience in appellate work; (2) Graham "achieved significant benefits" for both claimants; and (3) Franich "achieved significant results for both appellants" in the appeal to us. The Commission said the attorneys were entitled to fully compensatory and reasonable attorney's fees at an hourly rate of $450 and did not reduce any of the claimed hours. It awarded $34,777.40 to Rusch and $8,928.50 to Dockter as fees and costs. The claimants appeal.[21]

---

[21] The claimants contended that the Commission's attorney's fees order in this case was final for purposes of appeal but sought clarification of this point. *See D&D Services v. Cavitt*, 444 P.3d 165, 168-69 (Alaska 2019) (holding that attorney's fees order was not final for purposes of appeal when Commission remanded case to Board at conclusion of appeal). SEARHC agreed that the order was final for purposes of appeal. We agree with the parties: because the Commission decision underlying the fee award was final — and in fact was appealed — the fee order was itself appealable under Alaska Appellate Rule 204.

## III.  STANDARD OF REVIEW

"We use our independent judgment to interpret the attorney's fees provision of the Workers' Compensation Act."[22]  "Whether the Commission correctly applied the law in determining an award of attorney's fees is a question of law that we review de novo."[23]  "When the Commission makes factual findings, its 'findings of fact may be reversed on appeal if not supported by substantial evidence in light of the whole record.' "[24]

## IV.  DISCUSSION

The Alaska Workers' Compensation Act regulates the fees attorneys can receive for representing claimants.  Claimants' attorneys are limited to attorney's fees awarded by the Board, the Commission, or a court,[25] with two exceptions not applicable here.[26]  We have refused to enforce fee agreements that do not comply with the Act.[27]

---

[22]     *Warnke-Green v. Pro-West Contractors, LLC*, 440 P.3d 283, 287 (Alaska 2019).

[23]     *Lewis-Walunga v. Mun. of Anchorage*, 249 P.3d 1063, 1066 (Alaska 2011).

[24]     *Id.* (quoting AS 23.30.129(b)).

[25]     *See* AS 23.30.145(a) ("Fees for legal services rendered in respect to a claim are not valid unless approved by the [B]oard . . . ."); AS 23.30.145(c) (authorizing court-awarded attorney's fees); AS 23.30.008(d) (requiring attorney's fees award to successful party in Commission appeals).

[26]     *See* AS 23.30.260 (providing that it is a misdemeanor to "receive[] a fee, other consideration, or a gratuity on account of any services rendered for representation or advice with respect to a claim, unless the consideration or gratuity is approved by the board or the court").  The exceptions are when either "the fee does not exceed $300 and is a one-time-only charge to an employee by an attorney licensed in this state who performed legal services with respect to the employee's claim but did not enter an appearance," AS 23.30.260(b)(1), or the parties settle the claim in a way that dispenses

(continued...)

Claimants' attorneys must prevail "on a significant issue on appeal" to be awarded fees for an appeal;[28] in contrast Board-awarded fees depend on success on the claim itself.[29] In both instances, however, fee awards depend on success and are thus contingent fees.[30]

The Commission must award a successful party attorney's fees that the Commission "determines to be fully compensatory and reasonable."[31] In *Lewis-Walunga v. Municipality of Anchorage*, we considered legislative history and decided "the legislature intended Commission attorney's fees awards to follow the same rules as appellate attorney's fees awards in the courts."[32] We stated, "The Commission itself has noted that 'AS 23.30.008(d) is modeled on Alaska Rule of Appellate

---

**26** (...continued) with Board review and approval. AS 23.30.260(b)(2); AS 23.30.012.

**27** *McShea v. State, Dep't of Labor, Workers' Comp. Bd.*, 685 P.2d 1242, 1246, 1248 (Alaska 1984) (affirming superior court and Board decisions that refused to award fees pursuant to a contingent-fee agreement between claimant and attorney); *Hulsey v. Johnson & Holen*, 814 P.2d 327, 328-29 (Alaska 1991) (holding that law firm that charged claimant for legal services done to reopen compensation claim but did not seek board approval for the charged fee "had no right to charge" client under AS 23.30.145).

**28** *Warnke-Green v. Pro-West Contractors, LLC*, 440 P.3d 283, 291 (Alaska 2019) (emphasis omitted) (quoting *Lewis-Walunga*, 249 P.3d at 1068 & n.16).

**29** *See Adamson v. Univ. of Alaska*, 819 P.2d 886, 895 (Alaska 1991) (construing AS 23.30.145(b) as requiring that employee "be successful on the claim itself").

**30** *See Contingent Fee*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "contingent fee" as "[a] fee charged for a lawyer's services only if the lawsuit is successful or is favorably settled out of court").

**31** AS 23.30.008(d).

**32** 249 P.3d at 1067.

Procedure 508(g)(2).' "[33]  We have used the policies underlying former Appellate Rule 508(g) as well as our precedent decided under it when reviewing Commission fee awards.[34]  We have consistently construed the Act as requiring attorney's fee awards for claimants in both court and administrative proceedings to be "fully compensatory and reasonable so that competent counsel will be available to furnish legal services to injured workers."[35]

Before the Commission's creation, both the superior court and this court awarded attorney's fees pursuant to AS 23.30.145(c) and were guided by our precedents related to appellate fee awards and former Alaska Appellate Rule 508(g).  We focus our discussion on these precedents in light of the legislature's intent that Commission fee awards be similar to those awarded under former Rule 508(g).

**A.     The Commission Misconstrued The Act When Deciding Enhanced Fees Are Prohibited In Appeals To The Commission.**

The claimants challenge what they consider to be factual findings made by the Commission, arguing that no evidence supports those "findings." SEARHC responds

---

[33]     *Id.* at 1067-68 (citing *Mun. of Anchorage v. Syren*, AWCAC Dec. No. 015 at 2 (Aug. 3, 2007); *Doyon Drilling Inc. v. Whitaker*, AWCAC Dec. No. 008 at 2 n.3 (Apr. 14, 2006)).

[34]     *E.g.*, *id.* at 1068 & n.16; *Warnke-Green*, 440 P.3d at 293-94 (deciding that Commission fee award was "contrary to the policy underlying former Appellate Rule 508(g) and by extension AS 23.30.008(d)").

[35]     *Wise Mech. Contractors v. Bignell*, 718 P.2d 971, 973 (Alaska 1986); *Cortay v. Silver Bay Logging*, 787 P.2d 103, 109 (Alaska 1990) (including instruction to Board on remand to award full reasonable attorney's fees because "[i]f lawyers could only expect 50% compensation on issues on which they prevail, they will be less likely to take injured workers' claims in the first place").

that the Commission made adequate findings to support its award because the Commission relied "on its own direct experience in making fee awards" in deciding that the hourly rate it awarded was fully compensable.

We construe the Commission's decision differently than the parties because in our view the Commission engaged in statutory interpretation when it rejected the claimants' request for an award consistent with the modified lodestar method. We understand some of the Commission's "findings" as explaining its interpretation of the Act. For example the Commission used the verb "find" when it rejected enhanced fees, "find[ing]" them to be "in contravention" of legislative intent, but that usage does not transform legal reasoning into a factual finding. Nothing in the Commission decision suggests that its refusal to award fees using the modified lodestar method was confined to this case or was based on its particular facts.

The Commission's main objections to the claimants' request for enhanced fees were that we had not mandated enhanced fees in appellate workers' compensation cases and that they were inconsistent with legislative intent that the "workers' compensation claims be resolved, in part, at a cost reasonable to the employer." It also expressed concern that enhanced fees might dissuade employers from appealing Board decisions, presumably because the fees awarded to a claimant successfully defending those decisions might be higher. Finally it worried that enhanced fees would encourage appeals of "minor or even frivolous issues" because if the claimant were successful on the minor issues, the attorney "potentially would receive a very large [fee] award."

The claimants offer us arguments addressing those concerns. The claimants rely on *Wise Mechanical Contractors v. Bignell*,[36] a foundational case about appellate workers' compensation attorney's fees, to argue that we have authorized use of the

---

[36]     718 P.2d 971.

modified lodestar method, including awards of enhanced fees, in workers' compensation appeals. As to legislative intent, the claimants argue that using the modified lodestar approach or granting enhanced fees promotes a different legislative intent, which the Commission did not discuss: fairness to injured workers.[37] They point to the number of unrepresented claimants in workers' compensation appeals as well as a lower overall percentage of claimants' legal costs in the workers' compensation system from 2009 to 2019 to argue that low fees discourage attorneys from representing claimants.

SEARHC responds that low fees are not the reason so many claimants are unrepresented, theorizing that claimants do not look hard enough for representation or simply have non-meritorious cases. It explains that the larger proportion of legal costs for employers is related to the need for legal work in all cases, not just litigated claims.

We agree with the claimants that the Commission erred in determining that the Workers' Compensation Act does not allow awards of enhanced attorney's fees under a modified lodestar approach. In so ruling, the Commission focused exclusively on the potential cost to employers associated with enhanced fees. The legislature's intent, however, is that the Act "be interpreted so as to ensure the quick, efficient, fair, and predictable delivery of indemnity and medical benefits to injured workers at a reasonable cost to [their] employers."[38] The statutory language calls not only for focus upon employer costs, but for a balancing of competing interests. In its decision reviewing the Board's fee award, the Commission observed that "represented claimants frequently are more successful than unrepresented claimants . . . because attorneys are skilled in collecting and presenting the kind of evidence necessary to succeed in a

---

[37] *See* AS 23.30.001(1) (requiring Act to be interpreted so as 'to ensure the quick, efficient, fair, and predictable delivery of . . . benefits").

[38] AS 23.30.001(1).

workers' compensation case."[39] We too have noted that "a litigant's chance of success on a workers' compensation claim may be decreased" when a claimant is unrepresented.[40] Adequate fee awards are essential to "ensur[ing] that competent counsel are available to represent injured workers."[41] In contrast to its position on appeal to us, during the claimants' Board hearings, SEARHC was "willing to stipulate to . . . the difficulties injured workers face in finding attorneys to represent them, 'particularly in the Juneau venue and the Fairbanks venue.' "[42] Employers' costs for workers' compensation are a consideration when construing the Act, but they are not the only one. Fairness to claimants, which includes access to possible representation by competent attorneys, is another consideration.

None of the Commission's other expressed concerns justifies its interpretation of the statute. It is not apparent how the possibility of enhanced fees for claimants would discourage employers from filing appeals. The possible cost of attorney's fees presumably is a consideration anytime an employer contemplates appealing an adverse Board decision, and it is unlikely that potential application of the modified lodestar method would change the decision. As for the concern that employees would file appeals of minor or frivolous issues in hopes of procuring munificent fees, we

---

[39] *Rusch v. Se. Alaska Reg'l Health Consortium*, AWCAC Dec. No. 245 at 36 (Mar. 29, 2018), *rev'd* 453 P.3d 784 (Alaska 2019).

[40] *Bustamante v. Alaska Workers' Comp. Bd.*, 59 P.3d 270, 274 (Alaska 2002).

[41] *Bignell*, 718 P.2d at 975.

[42] *Rusch v. Se. Alaska Reg'l Health Consortium*, 453 P.3d 784, 790 (Alaska 2019).

agree with the claimants that the Commission "has sufficient discretion to prevent this result." The Commission awards fees only to a successful party on appeal and has the power to award fees against an employee who files a frivolous appeal.[43]

Finally, the Commission refused to consider enhancement of any lodestar amount because we had not required it. But our holding in *Bignell* allows, even if it does not require, such enhanced fees for claimants' counsel. We require that attorney's fees for claimants be fully compensatory and reasonable and explicitly stated in *Bignell* that "full compensation is not necessarily limited to an award of an hourly fee."[44] Later, in *Pioneer Construction v. Conlon*,[45] we acknowledged we had approved fees "in excess of the fee that the attorney would have earned had he been employed on an hourly basis" in order to ensure "competent counsel for . . . claimants."[46] We required findings justifying enhancement in *Conlon* because of a lack of "explicit norm[s],"[47] but we did not disavow enhanced fees.

The claimants base much of their argument for enhanced fees on *Bignell*, highlighting its similarities to their own cases and contending as a result that *Bignell* mandates enhanced fees for them. At oral argument before us, they suggested, based on *Bignell*, that a multiplier of two be used in all cases to account for contingency. They acknowledge, however, that the modified lodestar method does not always enhance, and sometimes even decreases, baseline hourly fees. SEARHC meanwhile seeks to limit

---

[43]    AS 23.30.008(d).

[44]    *Bignell*, 718 P.2d at 973.

[45]    780 P.2d 995 (Alaska 1989).

[46]    *Id.* at 1001 (citing *Bignell*, 718 P.2d at 972-73, 975).

[47]    *Id.*

*Bignell*'s impact by arguing that our decision in that case was based on the trial court's determination that the attorney had underestimated his hours.

In *Bignell* we affirmed the superior court's award of appellate attorney's fees, which was twice the fee the claimant's attorneys "would have received had they been working on an hourly fee basis."[48] The superior court awarded the requested fees

> noting that it was convinced that Bignell's counsel spent substantially more time on appeal than the 147 hours they had estimated; that the benefits resulting from their services were of a high degree; and that their compensation was contingent upon success on appeal, an unlikely event once compensation had been denied at the superior court level.[49]

We affirmed the superior court's award, citing four factors: (1) "the time spent by counsel"; (2) "the complexity and novelty" of the case; (3) the benefit to the client; and (4) "the contingent nature of counsel's right to compensation."[50] Our affirmance was based on multiple factors, not solely on the contingent nature of the work.[51] The factors we cited support the claimants' argument here that at times enhancement of a lodestar fee may be appropriate to fully compensate attorneys representing claimants in difficult cases.

SEARHC asserts that we rejected any individualized inquiry into

---

[48] *Bignell*, 718 P.2d at 972.

[49] *Id.*

[50] *Id.* at 975.

[51] Our decision in *Pioneer Construction v. Conlon* illustrates this point: we required some explanation for the enhanced fees awarded in that superior court appeal. 780 P.2d at 1000-01.

contingency in *State, Department of Revenue v. Cowgill*,[52] and it maintains the Commission properly relied on its own experience in other cases when setting the hourly rate for Franich and Graham. But SEARHC misinterprets our decision in *Cowgill* when it argues that we "expressly rejected efforts to base fee claims on . . . 'individualized inquiries.' " In *Cowgill* we expressly rejected the employer's effort to tie claimants' attorney's fees to fees paid to employers' attorneys because of the different nature of these two practices and because the "differences work to drive defense counsel rates downward and militate against using defense rates as a benchmark in awarding fees to employees' attorneys."[53] We also rejected the employer's suggestion that the Board deal with contingency for claimants' attorneys by considering how successful an individual attorney had been in past cases to determine whether that attorney should be awarded a higher, contingent rate in the case then before it.[54] This is the individualized contingency inquiry we rejected. But we reiterated in *Cowgill* what we said in *Bignell*: contingency is an appropriate factor to consider when awarding fees to claimants' counsel, and "fees from successful cases ideally serve as a rough counterbalance to unpaid time spent on unsuccessful cases."[55] We note that the factors set out in Professional Conduct Rule 1.5(a) require some individualized inquiry in *all* cases because they include such

---

[52]    115 P.3d 522 (Alaska 2005).

[53]    *Id.* at 525.

[54]    *Id.* at 526.

[55]    *Id.*

considerations as the attorney's "experience, reputation, and ability" as well as the nature and length of the attorney-client relationship.[56]   Those factors necessarily apply to individuals and are not readily applicable to broad groups or categories.

Our precedent authorizes enhanced fees for claimants as one way to account for contingency and provide fully compensatory and reasonable fees.  The Commission therefore erred in construing the Act as prohibiting enhancement of a lodestar fee in all cases.  The Act does not require enhancement of a lodestar amount, but the Act also does not prohibit it.  On remand the Commission must evaluate the claimants' arguments about both the overall contingent nature of representing claimants and the difficulties of each claimant's appeal, among the Rule 1.5(a) factors, in determining whether enhancement under the modified lodestar method is appropriate.

B.     **The Commission's Findings Regarding What Constitutes A Fully Compensatory and Reasonable Fee Award Must Consider Relevant Argument and Evidence.**

The Commission decided that $450 an hour was "a fully compensatory and reasonable rate" for both attorneys in this matter.  Although the Commission stated it was applying the factors in Professional Conduct Rule 1.5(a) in reaching its determination, it did not explain in any detail how it weighed the relevant factors to reach that result. Moreover, the Commission stated that it considered the contingent nature of workers' compensation practice and had relied on unidentified prior cases to reach the hourly fee,[57] but it did not address some of the claimants' arguments about contingency or the

---

[56]      Alaska R. Prof. Conduct 1.5(a)(6)-(7).

[57]      Final Commission decisions do not include a fee award for the appeal. Under the Commission's regulation regarding attorney's fees, a party seeking fees does so by filing a motion within ten days of a final Commission decision.  8 AAC 57.260(a). We have observed that "[t]he Commission has published few of its attorney's fees

(continued...)

evidence they submitted about their own and other attorneys' non-contingent hourly fees. For example, the claimants argued an enhancement was justified because of the novelty and difficulty of the issues in the case.[58] The Commission did not say how it evaluated this argument, even though we identified "the complexity and novelty" of the case as well as "the contingent nature of counsel's right to compensation" as reasons to affirm enhanced fees in *Bignell*.[59]

On appeal to us, the claimants argue the Commission's findings about the hourly rates are not supported by the record; SEARHC counters that the Commission appropriately relied on its own experience and judgment when it decided $450 was a fully compensatory and reasonable rate that accounted for contingency.

---

[57] (...continued) decisions." *Warnke-Green v. Pro-West Contractors, LLC*, 440 P.3d 283, 293 & n.40 (Alaska 2019). As a result we are unable to compare the Commission's awards in other cases with the award here. The Commission's reliance on our decision in *Warnke-Green* to justify its award here is inapposite. In that case we reversed the Commission's reduction of the claimant's attorney's requested hourly fee. The only evidence demonstrating a "reasonable hourly rate[] in the record" was an affidavit submitted by the claimant's attorney in support of his $400 request, which the employer had not challenged. *Id.* at 293. Our decision rested on the lack of evidence supporting the Commission's reduction of the fee award to a $300 hourly rate, *id.* at 293, which is a concern in this case as well.

[58] *See* Alaska R. Prof. Conduct 1.5(a)(1) (including "the novelty and difficulty of the questions involved" as factor to consider for reasonable fee).

[59] *Wise Mech. Contractors v. Bignell*, 718 P.2d 971, 975 (Alaska 1986). Novel or difficult issues may increase risk in contingent cases and serve as an additional reason for high fee awards. *See* Alaska R. Prof. Conduct 1.5(a)(1); *cf. Thomas v. Bailey*, 611 P.2d 536, 542 (Alaska 1980) (observing in public interest litigation that "an upward adjustment" in fees may be justified when "pertinent law is unclear at the outset of a case" (quoting Note, *Court Awarded Attorney's Fees and Equal Access to the Courts*, 122 U. PA. L. REV. 636, 710-11 (1974))), *superseded by statute* ch. 86, SLA 2003.

While the Commission's decision did not clearly state its reasoning, we are concerned that the Commission seems to have relied solely on representations made in other workers' compensation appeals and examined past Board awards, and did not engage with evidence provided by the claimants, in determining attorney's fees in this matter. Doing so may have given undue weight to workers' compensation experience and discounted other relevant factors that must be considered when determining a reasonable fee. In Rusch's first appeal we explicitly held that workers' compensation experience, while relevant, is not the only consideration the Board should use when awarding fees; "an attorney's experience in related legal fields . . . should be relevant as well."[60] This premise applies equally to the Commission's determination of fee awards.

The claimants submitted evidence before the Commission regarding Franich's and Graham's hourly rates in non-contingent cases, as well as evidence that $450 per hour for non-contingent work was not exorbitant, but was within the range of reasonable non-contingent fees for attorneys with comparable legal experience practicing in other potentially related areas of law. SEARHC provided no evidence in opposition. The Commission appeared to dismiss the claimants' evidence out of hand because it involved work in areas of law other than workers' compensation. In doing so, the Commission ignored one of our holdings in the first *Rusch* appeal and failed to at least minimally address relevant evidence and related argument. The Commission may certainly weigh the credibility of the evidence presented by the claimants, and explain why it gives the evidence more or less weight in its determination, but a decision to give this evidence little or no weight simply because it involves practice and fees in an area of law other than workers' compensation would be an abuse of discretion.

---

[60] *Rusch v. Se. Alaska Reg'l Health Consortium*, 453 P.3d 784, 799-800 (Alaska 2019).

Relatedly, at oral argument before us SEARHC outlined the Board's tiered approach to awarding fees based on attorneys' experience representing claimants, which may also be used by the Commission. According to SEARHC's argument, attorneys move to higher tiers as they represent more claimants, and the hourly rate for each tier appears to increase when the Board is convinced that claimants' attorneys as a whole are undercompensated. This method, while providing structure and presumably limiting litigation, also rewards attorneys in markets with more workers' compensation claimants, as these attorneys can more easily specialize in claimants' cases. The fee structure may discourage attorneys in smaller markets and those with a more general practice from representing claimants when those attorneys can earn as much or more on non-contingent cases. In light of SEARHC's acknowledgment before the Board about claimants' difficulties finding attorneys to represent them in smaller cities,[61] the Commission should consider the possible impact of this method of awarding fees on the availability of representation for the claimants here.

We reiterate that workers' compensation experience, while relevant, is not the only factor the Commission should look to when considering the claimants' fee request. All work before the Commission is appellate, and the Commission itself recognized that both attorneys here were experienced in appellate law. Yet the Commission ultimately discussed solely workers' compensation attorney's fee requests in explaining its decision.

The claimants ask us to award fees for the Commission appeal under AS 23.30.145(c), but because the Commission erred in construing the Act and because

---

[61]     *Id.* at 790.

we review the amount of fee awards for abuse of discretion,[62] it is appropriate for the Commission to exercise its discretion and to make the fee award as permitted under a correct understanding of the Workers' Compensation Act. On remand the Commission should evaluate the claimants' requests and evidence, and make findings that explain how it considered the Professional Conduct Rule 1.5(a) factors in determining fees, understanding that it is permitted, but not required, to enhance fees under a modified lodestar approach.

## V. CONCLUSION

We REVERSE the Commission's attorney's fee decision, VACATE its fee award, and REMAND the case to the Commission for further proceedings consistent with this opinion.

---

[62] *D&D Servs. v. Cavitt*, 444 P.3d 165, 168 (Alaska 2019).